Gilbert EWER, Linda Ewer, Wayne Guenther, and Mae Guenther, Plaintiffs-Appellants,

v.

LAKE ARROWHEAD ASSOCIATION, INC., Defendant-Respondent.

Court of Appeals

*No. 2011AP113. Oral argument December 13, 2011. —Decided May 24, 2012.*

2012 WI App 64

(Also reported in 817 N.W.2d 465.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael L. Bertling* of *McLario, Helm & Bertling, S.C.*, Menomonee Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Stephanie L. Dykeman* of *Litchfield Cavo, LLP*, Brookfield.

Before Vergeront, Sherman and Blanchard, JJ.

¶ 1. VERGERONT, J. Four members of Lake Arrowhead Association, Inc., bring this action for a declaratory judgment construing a provision of the Association's bylaws relating to the annual assessments charged to members who, like them, own consolidated sites. The primary issue on appeal is whether these members may bring this claim directly, in their own right, or whether, as the circuit court concluded, the right to bring this claim belongs to the Association and therefore must be brought as a derivative claim under Wis. Stat. §§ 181.0740–181.0742 (2009–10).[1]

¶ 2. We conclude that the claim asserted by the members is an individual claim belonging to each of the four members. We arrive at this conclusion because the claim is based on a direct injury to a right that is individual to each. Therefore, each may bring this claim on his or her own behalf, as a direct claim, and the circuit court erred in dismissing the action because the members did not bring the claim as a derivative claim.

¶ 3. Our conclusion that the circuit court erred in dismissing the action because the claim was not

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

brought as a derivative claim requires that we reverse the court's denial of the members' motion for a plaintiff class certification pursuant to WIS. STAT. § 803.08.

¶ 4. In addition, for the reasons we explain in the opinion, we reverse the court's ruling that the joinder requirements of the declaratory judgment statute, WIS. STAT. § 806.04(11), require dismissal.

¶ 5. Accordingly, we reverse the court's order dismissing this action and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 6. Gilbert and Linda Ewer and Wayne and Mae Gunther (collectively, "the Ewers") own residential property that is subject to the Covenants for Lake Arrowhead, Town of Rome, Wisconsin, Adams County (the covenants). The Lake Arrowhead Association, Inc. is a Wisconsin non-stock corporation organized under WIS. STAT. ch. 181, and its bylaws incorporate the terms of the covenants. The covenants authorize the Association to charge and collect an annual assessment from the Ewers and other owners of property or lots who are subject to the covenants. The Association has approximately 1602 voting members.

¶ 7. The amount of the assessment that the Association charges its members varies depending upon the type of lot each member owns. The Association charges "nonconsolidated site" owners one assessment each year, and it charges "consolidated site" owners a one and one-quarter assessment each year.[2] It is not disputed

---

[2] According to the complaint and attachments, a "consolidated site" is two or more contiguous residential lots that, with the Association's permission, are treated as single lots for certain purposes.

that the Ewers are consolidated site owners and have been charged a one and one-quarter annual assessment.

¶ 8. The Ewers disagree that the covenants authorize the Association to charge consolidated site owners a one and one-quarter assessment each year. They filed this action seeking a declaratory judgment whether the covenants authorize the Association to charge consolidated site owners a one and one-quarter annual assessment instead of one annual assessment. The complaint alleges that certification of a plaintiff class of all consolidated site owners is proper. According to the Association's answers to the Ewers' interrogatories, the number of consolidated site owners is approximately 140.

¶ 9. The Association filed a motion for summary judgment contending that the Ewers' claim should be dismissed on two grounds. First, the Association contended, the claim is a "derivative" claim under the definition of WIS. STAT. § 181.0740 and therefore the Ewers had to comply with the requirements of §§ 181.0741–181.0742 for a "derivative proceeding," which, without dispute, they had not done. Second, the Association contended that the Ewers failed to comply with the joinder requirements of WIS. STAT. § 806.04, the Uniform Declaratory Judgments Act. The Ewers opposed dismissal on both grounds. Also before the court was the Ewers' motion for certification of a plaintiff class. The Association opposed this motion.

¶ 10. The circuit court granted the Association's motion and dismissed the complaint. The court held that the proper construction of the covenants "is a matter of concern to all property owners" and, therefore, the claim is a derivative claim. Because there was no dispute the Ewers had not complied with the requirements of WIS. STAT. §§ 181.0741–181.0742, the

court concluded dismissal was required. Based on its ruling that the claim must be filed as a derivative claim, the court denied the request for certification of a plaintiff class. The circuit court also concluded that the complaint failed to meet the joinder requirements of the Declaratory Judgments Act and that this failure was an additional ground for dismissal.

## DISCUSSION

¶ 11. On appeal the Ewers contend the court erred in concluding their claim is a derivative claim, erred in denying their request for class certification, and erred in dismissing their claim because of the joinder requirements of WIS. STAT. § 806.04(11). The Association responds that the circuit court was correct on each issue.

## I. Derivative or Direct Claim

■

¶ 12. Our review on a motion for summary judgment is de novo, and we use the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). Where, as here, there are no disputed issues of fact, we decide which party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2).[3]

---

[3] We use the summary judgment standard of review because the Association captioned its motion as one for summary judgment, that is how the parties and court have treated the motion, and the parties agree there are no disputed issues of fact on the derivative/direct claim issue. However, we note that neither party has followed standard summary judgment procedure. *See* WIS. STAT. § 802.08(2), (3). The Association in its brief

¶ 13. In the following paragraphs we first discuss the background law on derivative proceedings and then analyze the Ewers' claim. For the reasons we explain, we conclude the circuit court erred in deciding that the Ewers' claim belonged to the Association and must therefore be brought as a derivative claim under WIS. STAT. §§ 181.0740–181.0742. Instead, we conclude that the claim belongs to each of the Ewers as individuals and therefore each may bring it as a direct claim.

A. Background Law

■

¶ 14. As a non-stock corporation, the Association is governed by WIS. STAT. ch. 181. Under WIS. STAT. § 181.0740, a "derivative proceeding" is "a civil suit in the right of a corporation." WISCONSIN STAT. § 181.0741 provides that "[a] derivative proceeding may be brought

accompanying the motion refers to factual allegations in the complaint to describe the Ewers' claim, evidently accepting them as true and not submitting any factual materials that dispute those allegations. However, the Association also filed an affidavit with an attachment and a number of exhibits with its brief, evidently to supplement the allegations of the complaint; the circuit court apparently considered at least some of these; and the Ewers did not object. In response the Ewers did not file any factual submissions, evidently because the Association's brief appeared to accept as true factual allegations in the complaint and because the Ewers did not dispute the Association's additional factual submissions.

After reviewing the amended complaint, the Association's answer, the materials submitted by the Association with its motion, and the facts that the Association has admitted, explicitly or implicitly, for purposes of its motion, we are satisfied that, for purposes of this appeal, there is no dispute over the facts we have related in paragraphs 6 and 7 of the background section.

in the right of a corporation . . . to procure a judgment in its favor by one or more members having 5% or more of the voting power or by 50 members, whichever is less, if each of these members meets [certain conditions]."[4] A "right of action" that belongs to a corporation cannot be brought as a direct claim by an individual shareholder or member, but must be brought as a derivative action in compliance with the statutory requirements. *See Notz v. Everett Smith Grp., Ltd.*, 2009 WI 30, ¶ 20, 316 Wis. 2d 640, 764 N.W.2d 904.

¶ 15. As already noted, there is no dispute that the Ewers have not complied with the requirements for bringing a derivative claim. Thus, the issue presented is whether the claim for a declaratory judgment construing the disputed provision is a claim based on "the right of" the Association, and, thus, a claim that may be brought by a member or members only as provided in Wis. Stat. §§ 181.0741–181.0742. This appears to be an issue of first impression in Wisconsin.

¶ 16. In the absence of case law interpreting or applying Wis. Stat. § 181.0740, we turn to the case law interpreting the same definition of "derivative proceeding" for business corporations. *See* § 180.0740(2). The parties agree this case law is relevant, although they disagree on how it applies to the facts of this case.

¶ 17. The fundamental inquiry in determining whether a claim must be brought as a derivative claim under Wis. Stat. § 180.0740(2) is: "Whose right is

---

[4] The conditions include that the member or members must "fairly and adequately represent[] the interests of the corporation in enforcing the right of the corporation," Wis. Stat. § 181.0741(2), and that a written demand must be made upon the corporation "to take suitable action," as provided in § 181.0742(1).

sought to be enforced by the . . . cause of action?" *Rose v. Schantz*, 56 Wis. 2d 222, 229, 201 N.W.2d 593 (1972). If the only direct injury is to the corporation, then the right to bring the action belongs solely to the corporation. *Id.* This is true even though the direct injury to the corporation "may have a subsequent impact on the stockholders' shares." *Id.* This injury to the stockholders is secondary to the injury to the corporation, which is the primary injury. *Id.*

¶ 18. Applying this "primary injury" test, courts have concluded that the following claims belong only to the corporation and therefore must be brought as a derivative action under Wis. Stat. § 180.0740(2): a claim for breach of fiduciary duty against officers and directors who allegedly engaged in a plan to deplete the corporation of its cash reserves so that one of them could engage in a competing business, *id.* at 224, 229; claims of breach of fiduciary duty, judicial dissolution, fraudulent transfer, and conversion based on allegations of a liquidation plan that would transfer all net corporate assets to a charitable foundation, thereby depleting the value of all stock, *Borne v. Gonstead Advanced Techniques, Inc.*, 2003 WI App 135, ¶¶ 14, 16, 266 Wis. 2d 253, 667 N.W.2d 709; a claim for breach of fiduciary duty against a majority shareholder alleging that it had rejected the opportunity for the corporation to purchase another company and instead purchased that company itself, *Notz*, 316 Wis. 2d 640, ¶¶ 17, 27; and misappropriation from the corporation, *Krier v. Vilione*, 2009 WI 45, ¶ 31, 317 Wis. 2d 288, 766 N.W.2d 517.

■

¶ 19. In contrast to a claim that belongs to the corporation, a claim based on the impairment of an individual right of a shareholder belongs to the share-

holder and is properly brought by the shareholder directly. *Rose*, 56 Wis. 2d at 228–29. "In order for a shareholder to have an independent claim, the injury must be 'one to the plaintiff as a shareholder as an individual, and not to the corporation[.]' " *Krier*, 317 Wis. 2d 288, ¶ 31 n.13 (citing 12B WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (perm. ed., rev. vol. 2009)).

¶ 20. One example of a proper direct claim by a shareholder is found in *Jorgensen v. Water Works, Inc.*, 2001 WI App 135, 246 Wis. 2d 614, 630 N.W.2d 230 (*Jorgensen II*). There we concluded that the minority shareholders of a closely held corporation could maintain a direct claim for breach of fiduciary duty by the directors when the directors ceased making distributions to the minority shareholders while continuing to pay distributions to themselves, the majority shareholders. *Id.*, ¶ 18. We reasoned that each shareholder has a right to be treated fairly by the directors, that the directors had breached this duty, and that the injury was primarily to the individual shareholders because the directors' actions "affect[ed] a [minority] shareholder's rights in a manner distinct from the effect upon other shareholders." *Id.*, ¶ 16 (citations omitted).

¶ 21. Another example of a claim properly brought as a direct claim by a shareholder is a claim for breach of fiduciary duty based on allegations that the corporation's assets were used to fund a "due diligence" investigation of another company that the corporation's board decided not to purchase, but which was then acquired by the majority shareholder. *Notz*, 316 Wis. 2d 640, ¶ 27. The *Notz* court treated this expenditure from corporate assets as a "constructive dividend" that the majority shareholder received "at the expense of the minority shareholders." *Id.*, ¶ 4. The *Notz* court con-

cluded that, as in *Jorgensen II*, in this situation the minority shareholders' rights were affected in a manner "distinct from the effect upon other shareholders," and the injury to the plaintiff minority shareholder was therefore an injury primarily to him as an individual. *Id.*, ¶¶ 26, 28 (citing *Jor gensen II*).[5]

B. Analysis of the Ewers' Claim

██

¶ 22. Each party argues that the above case law supports the respective positions of each on the nature of the Ewers' claim. The Ewers rely on *Jorgensen II* and argue that, like the distributions withheld from the minority shareholders there, the Association's construction of the disputed provision affects each consolidated site owner "in a manner distinct from the effect upon other [members]," that is, in a manner distinct from the effect upon the nonconsolidated site owners.

---

[5] In the cases concluding that a claim is the individual claim of a shareholder, this court and the supreme court have used "primary injury" in describing the injury suffered by the shareholder as the result of an impairment of an individual right, evidently as a parallel to the *Rose* inquiry whether the primary injury is to the corporation. *See Notz v. Everett Smith Group, Ltd.*, 2009 WI 30, ¶ 26, 316 Wis. 2d 640, 764 N.W.2d 904; *Jorgensen v. Water Works, Inc.*, 2001 WI App 135, ¶ 10, 246 Wis. 2d 614, 630 N.W.2d 230 (*Jorgensen II*); *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 777, 582 N.W.2d 98 (Ct. App. 1998) (*Jorgensen I*). We note that it is not clear in what circumstances, if any, there is a "secondary" injury to the corporation on a claim properly brought as a direct claim by an individual shareholder. However, whether the injury to an individual shareholder is the *only* injury or the *primary* injury, in both cases it is true that the primary injury is not to the corporation, and, thus, the claim does not belong to the corporation.

*See Jorgensen II*, 246 Wis. 2d 614, ¶ 16. According to the Ewers, the Association suffers no injury from the provision's current construction and would suffer no injury if the disputed provision were construed by the court as the Ewers claim it should be.

¶ 23. The Association responds that the Ewers are not analogous to the minority shareholders in *Jorgensen II* because the Ewers, like all members of the Association, are subject to the bylaws, and the Association does not apply a different construction of the disputed provision to the Ewers than it does to other members. The Association points out that a nonconsolidated site owner may in the future decide to become a consolidated site owner and then that owner, too, will be subject to a one and one-quarter annual assessment, just as the Ewers are. Fundamentally, the Association's position is that every member has an interest in the proper construction of the bylaws and is injured if the bylaws are incorrectly construed, and therefore only the Association has a right to bring an action for the proper construction of a bylaw.[6]

---

[6] In support of its argument that the Ewers' claim is derivative, the Association asks us to consider three other cases brought against the Association by consolidated site owners other than the Ewers. The Association describes these cases as "highly persuasive and helpful for their reasoning because the issues are substantially similar to the issues in [this] case." Our review of these cases persuades us that they are not helpful in deciding this appeal. It appears that only one of the three, a small claims action, involved the proper construction of this disputed bylaw provision. *Wilkes v. Lake Arrowhead Association, Inc.*, Adams County Circuit Court Case No. 2007SC195. That complaint sought return of the alleged excess assessment. The Association moved to dismiss on multiple grounds, including that the action was derivative in nature. The court commis-

¶ 24. The Association appears to read *Jorgensen II* to require that *every* claim that is individual to a shareholder must be based on treatment of that shareholder that is different from treatment of other shareholders, or, at least, from other shareholders that are similarly situated. We disagree with this reading. In *Jorgensen II* we analyzed a claim by minority shareholders for a breach of fiduciary duty to them individually. Because the claim was for a breach of the directors' duty to treat them fairly as shareholders, the injury to each of them as a result of the breach is aptly described as "affect[ing] a shareholder's rights in a manner distinct from the effect upon other shareholders." *Id.*, ¶ 16 (citations omitted). The same is true for the injury to the minority shareholder in *Notz*, who alleged a breach of fiduciary duty claim based on an expenditure by the majority shareholder that benefited the majority shareholder at the expense of the minority shareholders. *See Notz*, 316 Wis. 2d 640, ¶¶ 24–27.

¶ 25. However, claims other than one for breach of a fiduciary duty may require a different analysis to determine whether the direct injury is to the shareholder or member as an individual or, instead, is to the corporation. This is the fundamental inquiry. *See Krier*, 317 Wis. 2d 288, ¶ 31 n.13.[7] In this case, the Ewers'

sioner granted the motion with a "check the box" order form, which did not identify the basis for the commissioner's order dismissing the case.

[7] The court in *Krier* lists three examples of an individual action:

> In order for a shareholder to have an independent claim, the injury must be . . . to the plaintiff as a shareholder as an individual, and not to the corporation[;] for example, where the action is based on a contract to which the shareholder is a party, or on a right belonging severally to the shareholder, or on a fraud affecting the

claim seeks a construction of a provision in a covenant, incorporated into the bylaws of the Association, that addresses the assessment of members. We turn to an examination of this claim.

¶ 26. It is not disputed by the parties that the duty of members to pay assessments and the authority of the Association to collect assessments are contained in the covenants, which are incorporated into the Association's bylaws.[8] The disputed provision, with the most pertinent language italicized, states:

> All annual assessments for corporate areas and corporate facilities which pertain to inactive owner member-

---

shareholder directly, or where there is a duty owed to the individual independent of the person's status as a shareholder . . . .

*Krier v. Vilione*, 2009 WI 45, ¶ 31 n.13, 317 Wis. 2d 288, 766 N.W.2d 517 (brackets in original) (citation omitted). The Association argues that the Ewers' claim fits into none of these categories. Our analysis of the bylaws as a contract in the paragraphs that follow may cast doubt on the Association's assertion that the Ewers' claim does not fit within the first category: "[an] action based on a contract to which the shareholder is a party." However, even if the Association is correct that the Ewers' claim does not fit into any of these three categories, these categories are not exhaustive: they are, explicitly, "example[s]." Thus, the Association's argument that the Ewers' claim does not fit into these categories, like its argument that the facts here are distinguishable from those in *Jorgensen II*, does not obviate the need to examine the Ewers' particular claim.

[8] There are limited portions of the covenants and bylaws in the record. The issue of the proper construction of the disputed provision is not before us on this appeal, and the parties apparently agree that our record is sufficient for a decision on the derivative/direct claim issue. While our analysis on the derivative/direct claim issue would likely have benefited from a fuller presentation of the covenants and bylaws, the record we have is sufficient to resolve this issue.

ships shall be one-fourth (1/4) of the amount of such assessments which would be due on such owner memberships if the same had not been declared inactive; provided that if the owner membership made inactive is one which appertains to a residential lot which is a part of a consolidated site as is described elsewhere in this Declaration, no such annual assessments shall be charged with respect thereto, *except that at least one (1) full annual assessment or one (1) one-fourth (1/4) annual assessment, as the case may be, shall be charged with respect to every consolidated site.* [Emphasis added.]

According to another provision of the bylaws, failure to pay assessments when due results in a residential parcel owner losing the right, at least for a time, to attend Association meetings and to vote on any matter submitted to the membership.

¶ 27. The bylaws of a non-stock corporation are "the code of rules, other than the articles of incorporation, adopted under this chapter for the regulation or management of the affairs of a corporation . . . ." WIS. STAT. § 181.0103(3). Bylaws of a corporation constitute a contract between the members and the corporation. *O'Leary v. Board of Dir.*, 89 Wis. 2d 156, 169, 278 N.W.2d 217 (Ct. App. 1979) (stating, in a case involving a non-stock corporation, "the bylaws and articles of incorporation of a corporation form a binding contract between the members and the corporation") (citing *Attoe v. Madison Prof. Policemen's Ass'n*, 79 Wis. 2d 199, 255 N.W.2d 489 (1977)).

¶ 28. Thus, the Ewers have a contractual obligation to pay the assessment authorized by the bylaws for a consolidated site owner and a corresponding right, also contractual, not to pay assessments greater than

210

those authorized by the bylaws. The obligation to pay the assessment authorized by the bylaws and the right to pay no more than that is individual to each parcel owner, including the Ewers, because the assessment is imposed on each parcel owner as an individual. The adverse consequence of not paying the charged assessment in a timely manner illustrates the individual nature of the obligation to pay the assessment: the loss of the right to attend meetings and the right to vote, which each individual parcel owner would otherwise have.

¶ 29. Because the Ewers each have a right as an individual to pay no more in assessments than the bylaws authorize, they each suffer a direct injury as an individual if they pay more than the bylaws authorize.[9]

¶ 30. We do not agree with the Association's logic that the Ewers do not have individual rights or suffer individual injuries because every member could choose to be a consolidated site owner and thus would be subject to the higher assessment. Instead, we conclude that any time a nonconsolidated site owner becomes a consolidated site owner, that site owner suffers an individual injury if he or she pays more in assessments than the bylaws authorize. The fact that site owners can switch from a status in which they do not suffer injury into a status in which they do suffer injury does not logically transform the injury into one that is not individual to each who suffers it.

¶ 31. Similarly, we do not agree with the Association's argument that every member has an interest in the correct interpretation of the bylaws, and,

---

[9] The Ewers argue that they have a contractual right based on the covenants, evidently meaning the covenants alone, without considering their incorporation into the bylaws. We do not address this argument because it is unnecessary to do so.

therefore, the injury from any incorrect interpretation is an injury primarily to the Association. This argument fails to analyze the particular provision that forms the basis for the Ewers' claim and fails to explain why the Association, rather than the Ewers, suffers *any* injury if the Ewers pay more in assessments than the bylaws authorize the Association to collect.

¶ 32. The Association cites *Crittenton v. Southland Owners Ass'n*, 718 S.E.2d 839 (Ga. Ct. App. 2011), as persuasive authority in support of this argument, but we do not find that court's reasoning persuasive.[10]

¶ 33. In *Crittenton*, five members of an association filed an action on their own behalf seeking a declaratory judgment on whether the association and several members of its board of directors had employed the proper election and voting procedures under the association's bylaws. *Id.* at 840. The Georgia Court of Appeals concluded that this was a derivative claim because there were not "special injuries ... distinct from any injury to [the association] as a corporation." *Id.* at 843. The court stated that this claim "is essentially a claim that defendants breached their fiduciary

---

[10] The Association first referred to *Crittenton v. Southland Owners Ass'n*, 718 S.E.2d 839 (Ga. Ct. App. 2011), at oral argument. We therefore provided the Ewers with the opportunity to respond to this additional authority in a letter-brief to the court. We then granted the Association's request to reply. The Ewers request that we strike portions of the Association's letter-brief that, according to the Ewers, go beyond replying to the Ewers' response regarding *Crittenton*. We agree with the Ewers that the Association's reply contains authority and argument that go beyond a response to the Ewers' letter-brief. The Association should have sought permission to submit additional authority and argument. However, we conclude it is unnecessary to strike any portion of the Association's letter-brief.

duties owed to [the association] and all of its members" and that "election procedures properly conducted in accordance with the bylaws benefit all members; just as election irregularities harm all members of a corporation." *Id.*

¶ 34. We first note that *Crittenton* is factually distinguishable from this case in that all members in this case do not appear to be injured by the Association's construction of the disputed provision. That is, so far as the facts before us show, only the consolidated site owners are paying a greater assessment than that which they believe is authorized.

¶ 35. However, the more fundamental problem is with *Crittenton*'s unexplained assertion that, simply because every member of the association is harmed by an improper construction of the voting and election bylaw provisions at issue, the claim for a declaratory judgment on the proper construction belongs to the association, not to any individual member. The *Crittenton* court does not examine the bylaw provisions at issue to determine whether they give individual members any rights and, if they do, whether those individual rights have been injured by the actions complained of. The *Crittenton* court appears to assume that an injury to every member of the association equals an injury to the association itself; but the court does not explain this assumption and its validity is not at all obvious.

¶ 36. Contrary to *Crittenton*, cases from several other jurisdictions have concluded that the right to vote given to shareholders or members in bylaws is an individual right that may be vindicated by bringing a direct claim on their own behalf. *See Baldwin Cnty. Elec. Membership Corp. v. Catrett*, 942 So. 2d 337, 346 (Ala. 2006), and cases cited therein. *Baldwin*, in par-

213

ticular, employs an analysis that we find more persuasive than that in *Crittenton*.

¶ 37. The court in *Baldwin* held that a claim that the board of trustees failed to follow the procedures set out in the bylaws for the election of trustees was properly brought as a direct claim "because [the plaintiffs] are enforcing an individual right—the right to vote—rather than a right of the corporation." *Id.* (citations omitted). After describing the specific bylaw provisions at issue, *id.* at 340–41, the court's analysis began with the proposition that under Alabama law the bylaws and certain other writings of a voluntary association constitute a contract between the association's members. *Id.* at 345 (citation omitted). The court reasoned that, because every member was granted the right to vote in the bylaws, as well as by statute, "each member of the Cooperative had a contractual right to vote. If the plaintiffs' voting rights have been violated, the plaintiffs—not the corporation—have suffered a harm." *Id.* at 345–46. Therefore, the *Baldwin* court decided, the plaintiffs were enforcing an individual right, not the right of the corporation. *Id.* at 346.

¶ 38. Although *Baldwin* does not address a bylaw provision on member assessments, we conclude its analysis is sound, is consistent with Wisconsin law, and supports the conclusion we have reached here.

■

¶ 39. The Association may be making an additional argument in support of its assertion that the Ewers' claim belongs to the Association. The Association may be arguing that, even if the Ewers suffer a direct injury to their individual rights if they are required to pay a higher assessment than the bylaws authorize, they must still bring the claim for a declaratory judgment construing the disputed provision as a

214

derivative claim because the Association has an interest in the correct construction of the provision. Although we are uncertain if this is the Association's position, we address it to make sure we have considered all the Association's arguments.

¶ 40. The declaratory judgment statute, WIS. STAT. § 806.04(2), provides in part:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the instrument [or] contract . . . and obtain a declaration of rights, status or other legal relations thereunder.

We recognize this statutory language refers to "interest;" it does not refer to "injury," as does the derivative action case law we have discussed. However, on this appeal we need not resolve whether there is a difference in meaning and, if so, what it is.[11] For the reasons we have discussed in paragraphs 26 to 29 above, we conclude that the Ewers are "interested," within the meaning of § 806.04(2), in the construction of the disputed provision. And we will assume without deciding that the Association is also "interested." Thus, we will assume

---

[11] "The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible (sic) interest." *Lake Country Racquet & Athletic Club, Inc. v. Village of Hartland*, 2002 WI App 301, ¶ 15, 259 Wis. 2d 107, 655 N.W.2d 189 (citation omitted). In other words, the party "must have a personal stake in the outcome and must be directly affected by the issues in controversy." *Id.* (citation omitted). "This is measured by whether the claimant has sustained, or will sustain, some pecuniary loss or otherwise will sustain a substantial injury to his or her [or its] interests." *Id.*, ¶ 17 (citation omitted).

that the Association, like the Ewers, could bring a claim for a declaratory judgment construing the disputed provision.

¶ 41. However, the fact that the Association could also bring a claim for a declaratory judgment does not mean that the Ewers do not have an individual right to bring the claim based on the individual, direct injury to each. The Association's interest, as the Association has described it, is in a correct construction of the bylaw provisions it has a duty to enforce. The Ewers' injury is distinct from this interest of the Association. Neither the derivative action statute in WIS. STAT. ch. 181 nor the derivative action case law decided under WIS. STAT. § 180.0740(2) support preventing the Ewers from bringing an individual action in these circumstances.

¶ 42. Generally, the purpose of a derivative action statute is "to prevent injustice against the corporation by allowing shareholders to enforce corporate interests when the directors refuse to take corrective action." 13 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5949 (2004). This purpose is evident in the text of WIS. STAT. § 181.0742. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 49, 271 Wis. 2d 633, 681 N.W.2d 110 (when we construe a statute, the purpose of the statute as revealed in the text is part of determining the plain meaning of the statute). The derivative action statute requires that, before bringing a derivative action, the member must make a demand upon the corporation that it take "suitable action," and ninety days from the demand must pass, unless before then the corporation notifies the member it has

216

rejected the demand.[12] § 181.0742. Thus, we see that the purpose of the derivative action statute is to allow members, under certain conditions, to bring a claim they could not otherwise bring at all because the cause of action belongs to the association and not to them. Neither the statute nor the case law suggests an intent to limit the right a member has to bring a cause of action that belongs to him or her as an individual.

■

¶ 43. Finally, we note that the Association refers to the business judgment rule in support of its argument that the Ewers' claim is derivative. We are uncertain precisely on what grounds the Association views this rule to be relevant to the issue whether the Ewers' claim is derivative or direct. We clarify here that the business judgment rule is not relevant to deciding whether the Ewers' claim is derivative or direct.

■

¶ 44. The business judgment rule is "a judicially created doctrine that limits judicial review of corporate decision-making when corporate directors make business decisions on an informed basis, in good faith and in the honest belief that the action taken is in the best interests of the company." *Einhorn v. Culea*, 2000 WI 65, ¶ 19, 235 Wis. 2d 646, 612 N.W.2d 78. The rule "contributes to judicial economy by limiting court involvement in business decisions where courts have no expertise . . . ." *Reget v. Paige*, 2001 WI App 73, ¶ 17, 242 Wis. 2d 278, 626 N.W.2d 302 (citation omitted). The Association cites no authority for the proposition, and

---

[12] The ninety-day period is also shortened if irreparable injury to the corporation would result by waiting for expiration of the ninety-day period. WIS. STAT. § 181.0742(2).

we are aware of none, that the business judgment rule is part of the analysis for determining whether a claim is derivative or direct.

¶ 45. It may be that, in referring to the business judgment rule, the Association is in essence addressing the merits of the Ewers' claim, and advancing a construction of the disputed provision under which the Association has discretion to assess consolidated site owners either one assessment or a one and one-quarter assessment. It may be that, if a court determines this is the correct construction, the business judgment rule would be relevant in addressing a challenge to the Association's exercise of its discretion. However, the issue of the proper construction of the disputed provision is not before us. Moreover, the business judgment rule is not relevant to the proper construction of the bylaws, which are generally construed according to the principles of contract construction. *See Driver v. Driver*, 119 Wis. 2d 65, 71, 349 N.W.2d 97 (Ct. App. 1984) ("[T]he principles which govern the construction of contracts also govern the construction and interpretation of corporate bylaws . . . ." (alterations in original) (quotation omitted)).

¶ 46. In summary, we conclude that the Ewers' claim is an individual claim because it is based on a direct injury to a right that is individual to each of them. The Association asserts no injury to it other than that arising from its interest in a correct construction of the bylaws that govern it. This asserted interest does not negate the Ewers' right to bring this claim as a direct action, on their own behalf.

II. Plaintiff Class Certification

¶ 47. The sole ground on which the circuit court denied the Ewers' motion to certify a plaintiff class of

consolidated site owners was the court's conclusion that the Ewers must bring their claim as a derivative claim. A circuit court's decision to grant or deny a motion for class certification is committed to the circuit court's discretion. *Hermanson v. Wal-Mart Stores, Inc.*, 2006 WI App 36, ¶ 3, 290 Wis. 2d 225, 711 N.W.2d 694 (citation omitted). We affirm discretionary decisions if the circuit court applied the correct law to the facts of record and reached a reasonable decision. *Id.* Because we have concluded the circuit court erred in concluding that the Ewers must bring this claim as a derivative claim, the court applied incorrect law in denying the class certification motion. Accordingly, we reverse the court's denial of this motion and remand for consideration of the merits of the motion.

III. Joinder Under Wis. Stat. § 806.04(11) of Nonconsolidated Site Owners

■

¶ 48. In addition to dismissing the amended complaint because the claim was not filed as a derivative claim, the circuit court concluded that "the complaint must fail" because it does not join all the persons who have an interest, as required by Wis. Stat. § 806.04(11).[13] This statute provides that, when declaratory relief is sought, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding." § 806.04(11).

---

[13] As noted earlier, the Association included a failure to join interested parties as a ground for summary judgment. We do not decide whether this issue is properly raised by motion for summary judgment because this procedural question has no effect on the conclusions we reach in this section.

The court concluded that all of the nonconsolidated site owners must be made parties under this provision. The court reasoned that, even if it did not dismiss the action because the Ewers' claim was not filed as a derivative claim and, even if it granted the plaintiff class certification, dismissal would still be required because the Ewers had not joined all nonconsolidated site owners. Likely because the court had already decided the action had to be dismissed on other grounds, the court did not address how the nonconsolidated site owners would have to be joined and whether the Ewers would have the opportunity to join them.

¶ 49. The Ewers contend that the court erred in deciding that all 1602 members of the Association need to be joined, but they do not argue that the nonconsolidated site owners are not persons "who have or claim any interest which would be affected by the declaration . . . ." WIS. STAT. § 806.04(11). According to the Ewers, it is unreasonable to read § 806.04(11) to require joinder of all 1602 members because that would make a declaratory judgment resolving the construction of the disputed provision a practical impossibility. The Association responds that all 1602 members must be joined.

¶ 50. To the extent the circuit court meant that all 1602 members must be individually joined, such a ruling is not consistent with *Lozoff v. Kaisershot*, 11 Wis. 2d 485, 105 N.W.2d 783 (1960), a case the Association cites for another proposition. In *Lozoff* a homeowner sought a declaration construing the deed restrictions in a subdivision, suing the subdivision homeowners' association, an officer, and twenty-three members. *Id.* at 486–87. Some defendants argued that all members of the Association needed to be made parties under the declaratory

judgments statute, WIS. STAT. § 806.04(11).[14] *Id.* at 486–87, 489. The court rejected this argument and concluded that the Declaratory Judgments Act "should be construed together with [the statute on class actions] and [therefore] it does not exclude the procedure of representative defense of the interests of a class from an action for declaratory relief." *Id.* at 489. The court then held that, in light of the early stage of the proceedings, the named defendants represented the interests of the remaining members; therefore, there was "no defect of parties." *Id.* at 490.

¶ 51. *Lozoff* thus provides an option evidently not considered by the court—that only a few of the nonconsolidated site owners need be joined if they are suitable representatives of the class of nonconsolidated site owners.[15]

¶ 52. It is true that the Ewers' amended complaint did not name as defendants any of the nonconsolidated site owners who represented the class of nonconsolidated site owners. However, because the circuit court may permit an amendment to the complaint, the failure to join a necessary party does not require dismissal of the complaint. Under WIS. STAT. § 802.09(1), after six months from the filing of the summons and complaint, a party may amend the plead-

---

[14] When *Lozoff v. Kaisershot*, 11 Wis. 2d 485, 105 N.W.2d 783 (1960), was decided, the declaratory judgment statute was numbered WIS. STAT. § 269.56(11) (1959), but the relevant language was the same. The class action statute, now WIS. STAT. § 803.08, was numbered WIS. STAT. § 260.12 (1959), but the relevant language was the same.

[15] We recognize that this was not the focus of the parties' arguments on joinder in the circuit court. The focus was on whether the nonconsolidated site owners had an interest.

ing with leave of the court and "leave shall be freely given at any stage of the action when justice so requires." *See Habermehl Elec., Inc., v. DOT*, 2003 WI App 39, ¶ 12, 260 Wis. 2d 466, 659 N.W.2d 463 (it is within the circuit court's discretion to allow an amendment to the complaint to add a party after six months from the filing of the action); *see also Annoye v. Sister Bay Resort Condo. Ass'n, Inc.*, 2002 WI App 218, ¶¶ 2, 14, 256 Wis. 2d 1040, 652 N.W.2d 653 (after concluding the unit owners were interested parties under WIS. STAT. § 806.04(11), we reversed dismissal of the action and remanded with directions to allow an amendment to the complaint to add them as parties).

¶ 53. We do not direct the circuit court here to allow the amendment, as we did in *Annoye*, nor do we attempt to define here precisely what type of representative joinder of the nonconsolidated site owners is adequate under *Lozoff*, other pertinent case law, and WIS. STAT. § 806.04(11). Instead, the circuit court on remand will have the opportunity to more fully consider these matters and exercise its discretion accordingly.[16]

## CONCLUSION

¶ 54. We reverse the circuit court's order dismissing this action and remand to the circuit court for further proceedings on the Ewers' direct claim. We also reverse the court's ruling denying the Ewers' motion for

---

[16] It is unnecessary to decide whether our review of the circuit court's ruling that the complaint had to be dismissed because the nonconsolidated site owners were not joined is subject to de novo review or the more deferential standard accorded discretionary decisions. Under either standard, we conclude reversal is required because the court did not consider the option of representative joinder and the option of allowing an amendment to the complaint to accomplish this.

plaintiff class certification and remand for the court to consider the motion on the merits. Finally, we reverse the court's ruling on joinder insofar as the court ruled that dismissal was required because the Ewers had not joined all nonconsolidated site owners individually, and we remand for further consideration of this issue consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.