# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2010AP3158 |
| COMPLETE TITLE: | Park Bank,<br>            Plaintiff-Respondent,<br>     v.<br>Roger E. Westburg and Sandra L. Westburg,<br>            Defendants-Appellants-Petitioners. |

|  |
|---|
| REVIEW OF A DECISION BY THE COURT OF APPEALS<br>340 Wis. 2d 497, 812 N.W.2d 539<br>(Ct. App. 2012 – Unpublished) |

| | |
|---|---|
| OPINION FILED: | July 3, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 10, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Walworth |
| JUDGE: | John R. Race |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ROGGENSACK, ZIEGLER, GABLEMAN, JJJ., concur.<br>(Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants-petitioners, there were briefs by *Mark Sostarich*, Elkhorn, and oral argument by *Mr. Sostarich*.

For the plaintiff-respondent, there was a brief by *Michael T. Hopkins*, and *Hopkins McCarthy LLC*, Milwaukee, and oral argument by *Mr. Hopkins*.

An amicus curiae brief was filed by *John E. Knight* and *Kirsten E. Spira*, and *Boardman and Clark, LLP*, Madison, on behalf of the Wisconsin Bankers Association. Oral argument by *Mr. Knight*.

No. 2010AP3158
(L.C. No. 2007CV1028)

STATE OF WISCONSIN          :          IN SUPREME COURT

Park Bank,

    Plaintiff-Respondent,

  v.

Roger E. Westburg and Sandra L. Westburg,

    Defendants-Appellants-Petitioners.

**FILED**

**JUL 3, 2013**

Diane M. Fremgen
Clerk of Supreme Court

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioners, Roger E. Westburg and Sandra L. Westburg (collectively, the Westburgs), seek review of an unpublished decision of the court of appeals affirming the circuit court's grant of summary judgment to Park Bank.[1] Park Bank commenced an action against the Westburgs seeking payment under two guaranty contracts and the Westburgs alleged several counterclaims and affirmative defenses in response.

---

[1] Park Bank v. Westburg, No. 2010AP3158, unpublished slip op. (Ct. App. Feb. 8, 2012), affirming the circuit court for Walworth County, John R. Race, J., presiding.

¶2 Park Bank argues that the alleged counterclaims are derivative of the corporation. Therefore, as guarantors of payment, the Westburgs have no standing in this action to allege counterclaims that are derivative. Further, Park Bank asserts that the Westburgs' affirmative defenses are barred because they are subject to claim preclusion.

¶3 We conclude that Park Bank is entitled to summary judgment dismissing all of the Westburgs' counterclaims. With the exception of their claim of injuries arising from Park Bank's denial of access to their personal account, each of the Westburgs' counterclaims is derivative. Because each is derivative, the Westburgs have no standing to raise them given that they appear in this action as guarantors. Even if the Westburgs' remaining claim of injuries arising from Park Bank's denial of access to their personal account would be determined to be a direct claim, summary judgment dismissing the claim is appropriate because their alleged damages do not arise from Park Bank's denial of access.

¶4 We need not address whether claim preclusion bars the Westburgs' affirmative defenses because we determine that the affirmative defenses do not defeat Park Bank's demand under the guaranties for payment.

¶5 Finally, we conclude that Park Bank has made a prima facie case for summary judgment on its claims for payment. Because the Westburgs have failed to raise any genuine issue of material fact showing that payment is not due or that any debtor was not the subject of an insolvency proceeding, the circuit

2

court correctly granted summary judgment to Park Bank. Accordingly, we affirm the court of appeals.

I

¶6    This case is an action seeking payment under two "Continuing Guaranty (Unlimited)" contracts (the guaranties) executed by the Westburgs.  In 2005, the Westburgs decided to start a manufacturing business specializing in the manufacture of retail fixtures and point-of-purchase advertising displays. They found a failing woodcraft business located in Walworth, Wisconsin that had woodworking equipment and other assets necessary for their new business.

¶7    The Westburgs created two entities to house the business' operations and assets.  Zaddo, Inc. (Zaddo) was created to run the business operations, while Zaddo Holdings, LLC (Zaddo Holdings) was created for the purpose of holding title to real estate.

¶8    In order to fund the purchase of the failing woodcraft business, the Westburgs sought financing from Park Bank.  To secure the needed financing, the Westburgs executed the two guaranties that are at issue in this case.  One of the guaranties guaranteed payment of Zaddo Holdings' debts to Park Bank and the other guaranteed payment of Zaddo's debts to Park Bank.  The guaranties are otherwise identical in the obligations imposed upon the Westburgs.

¶9    Each of the guaranties provides that the Westburgs "jointly and severally guarantee[] payment of the Obligations defined below when due or, to the extent not prohibited by law,

3

at the time any Debtor becomes the subject of bankruptcy or other insolvency proceedings." The term "Obligations" under the guaranties is defined as "all loans . . . and all other debts, obligations and liabilities of every kind and description. . . ."

¶10 The guaranties additionally grant to Park Bank "a security interest and lien in any deposit account" that the Westburgs might have with Park Bank. Under the guaranties, Park Bank may "after the occurrence of an event of default" set-off any unpaid amounts owed "against any deposit balances . . . or other money now or hereafter owed [the Westburgs] by [Park Bank]."

¶11 Park Bank took a mortgage on the Westburgs' home in Illinois as a part of the financing process but subsequently released the mortgage when the Westburgs sold their home in 2005. Park Bank required the Westburgs to deposit the proceeds from the sale of the home into an account with Park Bank and it took a security interest in that account as collateral for the business loans. The proceeds from the sale of the home were in excess of $600,000.

¶12 The Westburgs utilized the funds in the account for several purposes. They withdrew $227,668.12 from the account in order to pay down a portion of the business' real estate loan, which they allege caused Park Bank to release its security interest in the account. The record also indicates that the Westburgs used the account for their daily living expenses because they did not, at least as of August 30, 2006, draw a

4

salary from Zaddo. The account represented the Westburgs' sole source of funds since all of their other assets had been invested in Zaddo and Zaddo Holdings.

¶13 In 2006, the business relationship between Park Bank, Zaddo, Zaddo Holdings, and the Westburgs began to fall apart. By the spring of 2006, Park Bank argued that Zaddo had defaulted on its loans. In response, the Westburgs asserted that the loans were never in monetary default.

¶14 As a result of Zaddo's alleged default, the Westburgs, as guarantors and on behalf of Zaddo and Zaddo Holdings, executed a "Forbearance Agreement" with Park Bank that was dated May 11, 2006. The Westburgs allege that Park Bank pressured them into signing the forbearance agreement without adequate time to review it and without an opportunity to have an attorney review it.

¶15 In the forbearance agreement, the parties agreed that Zaddo's loans were in default, but Park Bank agreed to forbear taking any further action on the loans until September 30, 2006. In return, the parties agreed that Zaddo would meet certain conditions related to its profitability and to staying current on its loan obligations. Additionally, Zaddo was required to furnish certain financial information to Park Bank on a regular basis and was to comply with its outstanding loan obligations to Park Bank and other third-party creditors.

¶16 According to Park Bank, Zaddo was unable to meet the terms of the forbearance agreement. Zaddo's alleged non-performance prompted a meeting between the Westburgs and Park

5

Bank on August 30, 2006. At that meeting, Park Bank informed the Westburgs that it was prepared to petition for a receivership if Zaddo did not petition for one voluntarily.[2] The Westburgs argued against petitioning for a receivership.

¶17 During a break in the August 30 meeting, Roger Westburg attempted to withdraw money from the Westburgs' personal account with Park Bank. He discovered that Park Bank had put a hold on the account and would not allow him access to it.

¶18 Roger Westburg returned to the meeting and demanded access to the personal account. When the Westburgs advanced that Park Bank had no right to freeze their account, Park Bank responded that it was entitled to the entire account.

¶19 The Westburgs allege that Park Bank said it would release the hold on the account only if the Westburgs agreed to Park Bank's demand that Zaddo enter a receivership. As a result, the Westburgs agreed that Zaddo would petition for a receivership under what they described as "extreme duress."

¶20 Shortly after the August 30, 2006 meeting, the Westburgs executed a "Cooperation Agreement" with Park Bank in which Park Bank agreed to allow them access to the funds in the

---

[2] Under Chapter 128 of the Wisconsin Statutes, a court may "sequestrate the property of a debtor and appoint a receiver" under certain conditions. Wis. Stat. § 128.08(1) (2009-10). One such condition is when a corporation "has been dissolved or is insolvent or is in imminent danger of insolvency or has forfeited its corporate rights." Id. A creditor may petition for the appointment of a receiver. Id.

personal account. The Cooperation Agreement was executed on September 6, 2006, restoring the Westburgs' access to the personal account.

¶21 Zaddo later filed a petition for a receivership and a receiver was appointed. During the receivership, Zaddo's assets were liquidated and the receiver made payments to Park Bank. The Westburgs did not receive a complete breakdown regarding how Park Bank applied different funds from assets that were liquidated by the receiver.

¶22 Park Bank then commenced a foreclosure action against Zaddo Holdings on October 19, 2006. The circuit court granted a default judgment against Zaddo Holdings, and the foreclosed property was sold at a sheriff's sale.

¶23 This action against the Westburgs seeking payment under the guaranties was commenced by Park Bank following the receivership and foreclosure proceedings. In its complaint, Park Bank alleged that when the payments from the receiver were applied, the Westburgs owed Park Bank $681,852.05 plus interest on the Zaddo guaranty. Additionally, it alleged that the Westburgs owed Park Bank $698,718.17 plus interest on the Zaddo Holdings guaranty.

¶24 As grounds for collection under the Zaddo guaranty, Park Bank alleged that Zaddo was in default on its loans for failure to make the required payments. Additionally, Park Bank contended that Zaddo's receivership triggered the Westburgs' obligations under the Zaddo guaranty. Regarding the Zaddo Holdings guaranty, Park Bank likewise alleged "payment default"

7

and that the Zaddo receivership triggered the Westburgs' obligation to pay.

¶25 In their answer, the Westburgs asserted several counterclaims against Park Bank. One such counterclaim alleged a breach of fiduciary duty. In that counterclaim, the Westburgs maintained that Park Bank had wrongly denied them access to the funds in their personal account. They also alleged that Park Bank forced Zaddo into an unnecessary receivership along with several other breaches of fiduciary duty based upon Park Bank's conduct toward Zaddo and Zaddo Holdings.

¶26 In a counterclaim for breach of contract, the Westburgs further alleged that Park Bank breached its duty of good faith and fair dealing when it froze the Westburgs' personal account and authorized its release only when the Westburgs agreed to Park Bank's demands. As with their breach of fiduciary duty counterclaim, the Westburgs asserted that Park Bank breached its duty of good faith and fair dealing by forcing Zaddo into a receivership and taking other allegedly unlawful actions toward Zaddo in its business dealings. Additionally, the Westburgs alleged several other counterclaims including a counterclaim for declaratory judgment and injunctive relief, a counterclaim of negligence, and a counterclaim that Park Bank breached a duty to disclose.

¶27 Although the Westburgs' answer did not specify the damages they sought for each counterclaim, they later filed an itemized list of damages. They sought damages for the loss of their personal investment and loans to Zaddo and Zaddo Holdings,

8

liability resulting from their personal guaranties of Zaddo's debt to third-party vendors, and for liability stemming from their personal guaranties of Zaddo's corporate credit cards. Furthermore, the Westburgs claimed damages based upon unreimbursed expenses that they incurred on behalf of Zaddo and Zaddo Holdings on their personal credit cards and liability stemming from their personal guaranty of sales commissions owed by Zaddo. Finally, they sought damages for lost wages and employment benefits from Zaddo and for liability on their guaranties of other loan obligations under a separate Small Business Administration loan to Zaddo.

¶28 The Westburgs additionally pled several affirmative defenses, including an affirmative defense incorporating the Westburgs' counterclaims; a failure by Park Bank to state a claim upon which relief can be granted; that Park Bank was estopped from asserting its claims by its own conduct; that Park Bank breached its contracts with Zaddo, Zaddo Holdings, and the Westburgs; that the forbearance agreement is void and unenforceable having been obtained under duress; that the doctrine of laches barred Park Bank's claims; that Park Bank's claims were barred by an insufficient service of process; that Park Bank failed to mitigate damages; and that Park Bank failed to properly marshal assets and remedies.

¶29 Park Bank moved for summary judgment, arguing that it had made a prima facie case with regard to the Westburgs' obligations under the guaranties and that the Westburgs' counterclaims and affirmative defenses should be dismissed. The

circuit court denied the motion at a hearing, reasoning that disputes of material fact precluded the entry of summary judgment. The circuit court indicated that it would address the Westburgs' counterclaims and affirmative defenses at a later date.

¶30 Park Bank later renewed its motion for summary judgment, arguing that the Westburgs' counterclaims and affirmative defenses must be dismissed because they are derivative and the Westburgs lack standing to raise them. The circuit court held a second hearing to address Park Bank's motion. For each counterclaim, the circuit court concluded that the Westburgs alleged an action that belonged to Zaddo. However, the circuit court did not grant summary judgment on the Westburgs' counterclaim for injunctive and declaratory relief in its entirety, but instead dismissed it to the extent that it purported to claim injunctive or declaratory relief on behalf of Zaddo. With regard to the remainder of the counterclaims, the circuit court granted summary judgment.

¶31 Turning to the Westburgs' affirmative defenses, the circuit court determined that they could "only present defenses available to themselves." The circuit court proceeded to analyze each affirmative defense in turn. It granted summary judgment to Park Bank on the Westburgs' affirmative defenses of a failure to state a claim, laches, insufficiency of process, and failure to marshal assets, concluding that the evidence did not support those defenses.

¶32 As for the remainder of the Westburgs' affirmative defenses, the circuit court determined that if the Westburgs could raise defenses that Zaddo could have raised as a matter of law, then summary judgment would not be warranted. The circuit court canceled the previously-scheduled trial and ordered further briefing from the parties for the purpose of determining whether summary judgment was appropriate on any of the remaining affirmative defenses.

¶33 After additional briefing and at a third hearing, the circuit court concluded that claim preclusion prevented the Westburgs from asserting any defenses which might have been raised in the Zaddo Holdings foreclosure action. However, with regard to the remainder of the Westburgs' affirmative defenses, the circuit court reasoned that the Westburgs could assert defenses that otherwise could have been raised by Zaddo or Zaddo Holdings and denied summary judgment.

¶34 Prior to trial, the case was assigned to another judge due to judicial rotation. The parties again began to dispute the issues remaining for trial. The circuit court permitted summary judgment briefing and, in a written decision, granted summary judgment to Park Bank on all issues. It concluded that although the "path to this point is convoluted," Park Bank had made a prima facie case for summary judgment. Additionally, the circuit court concluded that the affirmative defenses asserted by the Westburgs did not raise any issue of material fact.

¶35 The Westburgs appealed and the court of appeals affirmed the circuit court. Stating that all of the Westburgs'

11

claims "arise out of the alleged injury to Zaddo," the court of appeals determined that the Westburgs "raise defenses and claims involving alleged harm and damage to Zaddo and/or Zaddo Holdings." Therefore, the court of appeals concluded that the Westburgs' counterclaims and affirmative defenses are derivative and that they lack standing to raise them in this action.

II

¶36 In this case, we are called upon to review the circuit court's grant of summary judgment to Park Bank. We review the grant of summary judgment independently of the determinations rendered by the circuit court and the court of appeals, but we apply the same methodology as the circuit court. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2009-10).[3]

¶37 The first issue raised on review is whether the Westburgs, as guarantors, lack standing to raise their counterclaims. In addressing this issue, we also must examine the nature of the counterclaims to determine whether they are derivative of the corporation. Issues of standing and determinations of whether a counterclaim is derivative present questions of law that we review independently of the

---

[3] All subsequent references to the Wisconsin Statutes refer to the 2009-10 version unless otherwise indicated.

12

determinations of the circuit court and the court of appeals. Krier v. Vilione, 2009 WI 45, ¶14, 317 Wis. 2d 288, 766 N.W.2d 517.

¶38 The second issue we address is whether the Westburgs' affirmative defenses defeat Park Bank's claims for payment under the guaranties.  Whether an affirmative defense defeats a demand for payment under a guaranty contract requires construction of the guaranty contract, which presents a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals.[4]  Crown Life Ins. Co. v. LaBonte, 111 Wis. 2d 26, 32, 330 N.W.2d 201 (1983).

III

¶39 We begin our analysis by addressing the Westburgs' counterclaims.  Park Bank argues that the Westburgs have no standing to allege counterclaims that are derivative because as guarantors they may not raise claims that are derivative of the corporation.  It contends that the Westburgs' counterclaims are derivative in nature.

---

[4] The Westburgs also challenge the court of appeals' conclusion that claim preclusion bars them from asserting their affirmative defenses.  We do not address their argument, and thus do not affirm the reasoning of the court of appeals, because we conclude that the circuit court properly granted summary judgment to Park Bank on other grounds.

Furthermore, the Westburgs argue that Park Bank cannot rely on what they argue are unpled allegations in a motion for summary judgment and in motions in limine.  We likewise do not address that argument.

¶40 In a derivative action, a shareholder "assumes the mantle of the corporation itself to right wrongs committed by those temporarily in control" of the corporation.  Roger J. Magnuson, 1 Shareholder Litigation § 9:1 (2012).  The purpose of a shareholder derivative action is "'to prevent injustice to the corporation by allowing shareholders to enforce corporate interests, when the directors refuse to take corrective action.'"[5]  Ewer v. Lake Arrowhead Ass'n, Inc., 2012 WI App 64, ¶42, 342 Wis. 2d 194, 817 N.W.2d 465 (quoting 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations, § 5949 (2004)).[6]

---

[5] The Westburgs in their briefing refer to themselves as "shareholders-guarantors," a label that reflects two of their several roles as business owners.  In addition to being the sole shareholders of Zaddo and the sole members of Zaddo Holdings, the Westburgs are also the officers in charge of each business entity.  However, as explained in ¶¶45-56, infra, the Westburgs appear in this action solely as guarantors, not in their capacities as officers, members, or shareholders.

[6] In contrast, a direct action is an action seeking a judgment awarding damages to the plaintiff individually due to injuries that the plaintiff individually suffered.  Read v. Read, 205 Wis. 2d 558, 569-70, 556 N.W.2d 768 (Ct. App. 1996).  In a direct action the complaining plaintiff individually recovers damages.  Roger J. Magnuson, 1 Shareholder Litigation, § 9:1 (2012).

¶41 In a shareholder derivative action, the claims belong to the corporation, not to the complaining individual.[7] Einhorn v. Culea, 2000 WI 65, ¶16, 235 Wis. 2d 646, 612 N.W.2d 78. Generally, a derivative claim is one that "a corporation could bring because the corporation's assets are affected." Borne v. Gonstead Advanced Techniques, Inc., 2003 WI App 135, ¶15, 266 Wis. 2d 253, 667 N.W.2d 709.

¶42 In Rose v. Schantz, 56 Wis. 2d 222, 201 N.W.2d 593 (1972), this court set forth the general framework to evaluate whether a claim is direct, derivative, or both. Under Rose, the "[r]ights of action accruing to a corporation belong to the corporation, and an action at law or in equity, cannot be maintained" by the complaining individual in a direct action. Id. at 229 (quoting Marshfield Clinic v. Doege, 269 Wis. 519, 526, 69 N.W.2d 558 (1955)). The focus of the inquiry is "[w]hose right is sought to be enforced" by the individual's direct action. Id.

---

[7] Shareholder derivative actions often involve minority shareholders seeking to remedy alleged mismanagement or malfeasance by officers or directors of a corporation. See, e.g., Read, 205 Wis. 2d at 569 (alleging controlling directors mismanaged a corporation); Notz v. Everett Smith Group, Ltd., 2009 WI 30, ¶23, 316 Wis. 2d 640, 764 N.W.2d 904 (determining that a breach of fiduciary duty claim is derivative based on a lost corporate opportunity). However, shareholder derivative actions may also arise where officers or directors have not injured the corporation but instead refuse to adequately advance the corporation's interests. See Ewer v. Lake Arrowhead Ass'n, Inc., 2012 WI App 64, ¶42, 342 Wis. 2d 194, 817 N.W.2d 465 (quoting 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations, § 5949 (2004)).

¶43 The Rose court determined that where the injury to the corporation is the primary injury and any injury to a shareholder is secondary, the shareholder may not bring a direct action, and is instead limited to commencing a derivative action:

> That such primary and direct injury to a corporation may have a subsequent impact on the value of the stockholders' shares is clear, but that is not enough to create a right to bring a direct, rather than derivative, action. Where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the derivative action alone that can be brought and maintained. That is the general rule, and, if it were to be abandoned, there would be no reason left for the concept of derivative actions for the redress of wrongs to a corporation.

Id. at 229-30. Thus, where an individual's injury results from the corporation's injury, the resulting claim is derivative and the individual lacks standing to raise it in a direct action. See also Notz v. Everett Smith Group, Ltd., 2009 WI 30, ¶20, 316 Wis. 2d 640, 764 N.W.2d 904.

¶44 Although the Rose court did not address whether the same course of conduct may give rise to both direct and derivative claims, it is well established that where the injury and damages are independent, both a direct action and a shareholder derivative action may be commenced. An individual "may sue to redress direct injuries to him or herself regardless of whether the same violation injured the corporation." 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations, § 5911 (perm.ed., rev.vol.2009). Case law further indicates that in a direct action the individual may not claim

16

damages sustained by the corporation or damages that the corporation could have sought in its own capacity. Buschmann v. Professional Men's Ass'n, 405 F.2d 659, 663 (7th Cir. 1969) (concluding that a direct claim existed where the plaintiff sought damages "which he sustained individually" that were not sustained by the corporation and could not have been asserted by the corporation in its own right).

¶45 However, examining the differences between direct claims, derivative claims, or claims that are both direct and derivative does not fully resolve our inquiry into whether the Westburgs as guarantors have standing to raise derivative counterclaims. Whether a guarantor may raise derivative claims individually in an action seeking payment under a guaranty is a question not previously addressed by Wisconsin courts. The court of appeals analogized the present case to Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333 (7th Cir. 1989). It found Mid-State's rationale persuasive, and we likewise agree that it is persuasive.

¶46 In Mid-State, a bank loaned money to a corporation and also obtained guaranties from the corporation's sole shareholders, Lasley and Maxine Kimmel. Id. at 1334. The corporation proceeded to lose money. Id. When the bank stopped making additional advances to the corporation, the corporation was unable to secure additional financing and was liquidated in bankruptcy. Id. The corporation and the Kimmels commenced an action against the bank, alleging several claims which included

17

violations of federal banking laws and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). Id.

¶47 The Mid-State court recognized that there are "good reasons . . . for the enduring distinction between direct and derivative injury," even when applied to guarantors. Id. at 1335. To avoid "double counting," courts must either attempt to apportion the recovery according to who bears the effects, or insist that the corporation recover and allow creditors, shareholders, officers, and all others involved in the corporate venture to "share any recovery according to the same rules that govern all receipts." Id. at 1336. Divvying up the recovery "would be a nightmare," and is an unnecessary task when "recovery by the firm handles everything automatically." Id. Additionally, requiring shareholder derivative actions prevents "efforts to divert the debtor's assets-to pay off one set of creditors . . . while keeping the proceeds out of the hands of the firm's other creditors." Id.

¶48 Rejecting the premise that guarantors are any different from "shareholders, creditors, managers, lessors, suppliers, and the like," the Mid-State court determined that guarantors "cannot recover on account of injury done [to] the corporation." Id. It would be "extreme" to allow "anyone who has dealt with a bank as guarantor [to] recover for derivative injuries." Id. Only where a guarantor suffers direct injury, which the Mid-State court emphasized is an "injury independent of the firm's fate," may the guarantor pursue direct remedies. Id. at 1336-37.

18

¶49 In Labovitz v. Washington Times Corp., 172 F.3d 897 (D.C. Cir. 1999), the Court of Appeals for the District of Columbia Circuit agreed that Mid-State presented persuasive authority for determining whether guarantors have standing to raise derivative claims. In that case, two guarantors of a corporation alleged several claims, which included a claim that the Washington Times Corporation failed to fully fund the corporation as it had promised.[8] Id. at 901-02. The failure to fund the corporation allegedly triggered the guarantors' obligations. Id. at 901-02. Agreeing with the Mid-State court's conclusion that guarantors may not advance derivative claims, the Labovitz court determined that the failure to fully fund the corporation was derivative. Id. at 903.

¶50 Both Mid-State and Labovitz recognize that guarantors are treated no differently from creditors in determining whether the guarantor may bring a derivative action. 877 F.2d at 1336; 172 F.3d at 898. Therefore, their conclusions accord with the general principle that "creditors may not maintain a derivative

---

[8] The guarantors in Labovitz were also shareholders, directors, and officers of the corporation that they guaranteed. Labovitz v. Washington Times Corp., 172 F.3d 897, 898 (D.C. Cir. 1999).

proceeding."[9]  13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations, § 5972.20 (2004).

¶51 Accordingly, we conclude that a guarantor lacks standing to raise derivative claims.  Having arrived at that

---

[9] The concurrence states that "our decisions...specifically provide that only a shareholder or beneficial owner has standing to bring a derivative claim."  Concurring op., ¶83.  In support of that premise, the concurrence focuses on Krier v. Vilione, 2009 WI 45, ¶29, 317 Wis. 2d 288, 766 N.W.2d 517 and also references Borne v. Gonstead Advanced Techniques, Inc., 2003 WI App 135, 266 Wis. 2d 253, 667 N.W.2d 709 and Shelstad v. Cook, 77 Wis. 2d 547, 253 N.W.2d 517 (1977).  Not one of those cases involved a guarantor.

The concurrence is alone in its interpretation.  No one in this case, not the circuit court, the court of appeals, the amicus (the Wisconsin Bankers Association) or even the parties, advances the concurrence's interpretation of those cases.

Likewise, neither the Wisconsin Bankers Association, the circuit court, the court of appeals, nor Park Bank shares the concurrence's interpretation of Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333 (7th Cir. 1989). Park Bank, unpublished slip op.

The concurrence asserts that Mid-State "has nothing to do with whether a guarantor has standing to bring a derivative claim" in Wisconsin.  Concurring op., ¶88.  In stark contrast to the concurrence's interpretation of Mid-State, the Wisconsin Bankers Association advances that the reasoning of Mid-State establishes that in this case, "[t]he guarantors lack standing to raise [derivative] claims and defenses against the bank . . . ."

Likewise, the circuit court and the court of appeals disagree with the concurrence's interpretation of Mid-State. Both courts relied on Mid-State in arriving at their conclusions that guarantors lack standing to bring a derivative claim. Finally, Park Bank extensively quoted Mid-State in its brief, arguing that it requires this court to conclude that "the Westburgs [lack] standing to pursue [their] derivative claims."

conclusion, we turn next to evaluate whether the counterclaims alleged by the Westburgs as guarantors are derivative.

¶52 With the exception of their claim that Park Bank unlawfully denied them access to their personal account, each of the Westburgs' counterclaims is derivative. The Westburgs' alleged injuries are secondary to those of Zaddo, arising as a result of Park Bank's conduct toward Zaddo before, during, and after Zaddo entered receivership. Zaddo was primarily injured by allegedly being forced into receivership and any alleged resulting injury to the Westburgs occurred as a result of Zaddo's alleged injury. Under Rose and subsequent case law, those counterclaims are considered derivative. 56 Wis. 2d at 229.

¶53 Furthermore, there is no indication that those counterclaims are both direct and derivative. The Westburgs' injuries, with the exception of Park Bank denying them access to their personal account, arise as a result of Zaddo's injuries, not independently of Zaddo's injuries. Therefore, the Westburgs do not have standing in the context of this action to assert their derivative counterclaims.

¶54 The sole counterclaim alleged by the Westburgs that is arguably direct is the claim that Park Bank unlawfully denied the Westburgs access to their personal account. However, even if Park Bank unlawfully had denied access to the personal account, Park Bank is still entitled to summary judgment on that counterclaim because the Westburgs claim damages based upon their investment losses to Zaddo and not based upon Park Bank's

21

denial of access to their personal account.[10] Each and every category of damages claimed by the Westburgs arises from their losses as guarantors, investors, and officers of Zaddo.[11]

¶55 The Westburgs were ultimately denied access to their personal account for approximately seven or eight days, from the August 30, 2006 meeting through when the Cooperation Agreement was executed on September 6, 2006. Any damages alleged must arise from a lack of access to the account during that time period. Like the court of appeals, we conclude that none of the alleged damages has any connection with Park Bank denying the

---

[10] The guaranties grant to Park Bank "a security interest and lien in any deposit account" that the Westburgs may have with Park Bank. Under the guaranties, Park Bank may "after the occurrence of an event of default" set-off any unpaid amounts owed "against any deposit balances...or other money now or hereafter owed [the Westburgs] by [Park Bank]." Furthermore, the guaranties in this case provide that the Westburgs have waived "all...legal and equitable surety defenses."

Although we need not examine the exact scope of the security interest granted to Park Bank by the guaranties or the Westburgs' waiver of all legal and equitable surety defenses, we observe that those provisions of the guaranties further strengthen our conclusion that they may not raise their counterclaims in this action.

[11] The Westburgs claim as damages losses on personal investments to Zaddo, losses resulting from personal guaranties of Zaddo's debt to third-party vendors, losses resulting from Zaddo corporate credit card debts, losses from personally guaranteed sales commissions owed by Zaddo, losses resulting from Zaddo's failure to reimburse their personal credit cards, liability on Small Business Administration loan guaranties of Zaddo, and lost wages and benefits from Zaddo.

Westburgs access to a personal account from August 30, 2006 until September 6, 2006.[12]

¶56 The Westburgs in other circumstances may have raised derivative claims as shareholders. See Wis. Stat. § 180.0741. However, in order to commence or maintain a shareholder derivative action, they must comply with certain statutory requirements. See Wis. Stat. § 180.0741 (allowing a "shareholder or beneficial owner" to commence or maintain a shareholder derivative action if the "shareholder or beneficial owner" meets certain conditions); see also Wis. Stat. § 180.0742 (setting forth additional limitations for when a shareholder derivative action may be commenced); Wis. Stat. § 180.0744 (requiring a court to dismiss a derivative proceeding under certain circumstances). No argument is advanced by the parties that the statutory prerequisites for a derivative action were met in this case. Therefore, we conclude that summary judgment dismissing all of the Westburgs' counterclaims is appropriate.

IV

¶57 Having addressed the Westburgs' counterclaims, we address next the Westburgs' affirmative defenses. Although the

---

[12] In addressing Park Bank's denial of access to the personal account, the court of appeals concluded as follows:

> While the Westburgs may have suffered individual duress when Park Bank denied them access to their personal money market accounts, the Westburgs do not allege any resulting monetary injury because the bank did eventually return the funds.

> Park Bank, unpublished slip op., ¶17 n.11.

parties primarily address the affirmative defenses in their arguments for and against the application of claim preclusion in this case, we do not reach their claim preclusion arguments. Instead, we examine the Westburgs' affirmative defenses to determine whether they defeat Park Bank's demand for payment under the guaranties.

¶58 The guaranties in this case are guaranties of payment. The guaranties provide that payment is required "when due or, to the extent not prohibited by law, at the time any Debtor becomes the subject of bankruptcy or other insolvency proceedings."

¶59 Guaranties of payment are different from other guaranties such as guaranties of collection. A guaranty of payment binds the guarantor to pay the debt according to the terms and conditions of the guaranty. Jack Levin, 38 Am. Jur. 2d Guaranty § 16 (2012). In contrast, a guaranty of collection is a promise that if the principal creditor cannot collect the claim with due diligence, generally following suit against the principal debtor, the guarantor will pay the creditor. Id.

¶60 Unlike a guaranty of collection, a guaranty of payment does not condition liability upon the creditor exhausting remedies against the debtor. Id. A creditor is under no obligation to first seek collection from the principal debtor or any other guarantor under a guaranty of payment. Bank of Sun Prairie v. Opstein, 86 Wis. 2d 669, 677, 273 N.W.2d 279 (1979) (quoting First Wis. Nat'l Bank of Oshkosh v. Kramer, 74 Wis. 2d 207, 211-12, 246 N.W.2d 536 (1976)). The law similarly imposes no duty upon the creditor to notify the guarantor of nonpayment

24

of the note by the principal debtor. <u>Farmers State Bank v. Hansen</u>, 174 Wis. 100, 103, 182 N.W.2d 944 (1921).

¶61 This court has recognized that affirmative defenses to a guaranty may be limited in scope depending on specific obligations imposed by the guaranty. In <u>Continental Bank & Trust v. Akwa</u>, 58 Wis. 2d 376, 206 N.W.2d 174 (1973), this court acknowledged that some affirmative defenses must be raised in a proceeding seeking payment of the underlying debts rather than by a guarantor in a proceeding seeking payment under the guaranty. In response to an affirmative defense that a bank was not the holder of the underlying debts in an action upon a guaranty under the Uniform Commercial Code, this court stated:

> While the affirmative defenses, as asserted by the defendants, concerning the possession, transfer and cancellation of the notes, may be fatal to plaintiff's cause of action, if he were proceeding upon the instruments, they are not necessarily fatal to plaintiff's cause of action upon its separate and independent contract of guaranty with the defendants.

<u>Id.</u> at 387. Instead, this court emphasized that satisfaction in full of the underlying indebtedness generally constitutes a defense in an action upon a guaranty. <u>Id.</u> at 389-90. A creditor is entitled to "but one performance, and if he receives that, by payment or other satisfaction, the [guaranty] is discharged." <u>Id.</u> at 389. Alternatively, release of the principal debtor from the underlying debt is normally also a defense in a guaranty action because "release of the principal also releases the [guarantor]." <u>Id.</u> at 390.

25

¶62 However, the Akwa court identified two exceptions to the defense of releasing the principal debtor: "[w]here the creditor releases a principal [debtor], the [guarantor] is discharged unless the creditor in the release reserves his rights against the [guarantor] or the [guarantor] consents to remain liable notwithstanding the release." Id. at 392. Accordingly, the defenses available to a guarantor are grounded in the specific terms and conditions of the guaranty contract. Id. at 387-90; see also Crown Life Ins. Co. v. LaBonte, 111 Wis. 2d 26, 43, 330 N.W.2d 201 (1983); Lakeshore Commercial Finance Corp. v. Drobac, 107 Wis. 2d 445, 454, 319 N.W.2d 839 (1982).[13]

¶63 The Westburgs must therefore assert affirmative defenses that defeat Park Bank's demands for payment under the guaranties in this case. In order to demand payment under the guaranties, Park Bank need show only that payment is due or that any debtor has become the subject of a bankruptcy or insolvency proceeding. Accordingly, the Westburgs' defenses must logically

---

[13] Additional or differing defenses to a guaranty may exist depending on the specific terms and conditions of the guaranty contract. As the Restatement (Third) of Suretyship and Guaranty notes, there is probably no area of guaranty law in which there is less consensus than the law of guaranty defenses. Rules "vary from jurisdiction to jurisdiction, from context to context, and from common law to the Uniform Commercial Code." Restatement (Third) of Suretyship and Guarantee, Ch. 3, Topic 3, Title B, Introductory Note (1995).

address whether payment is due or whether a debtor has become the subject of a bankruptcy or insolvency proceeding.[14]

¶64 In pleading their affirmative defenses, the Westburgs do not assert that payment is not due or that Zaddo was not the subject of a bankruptcy or insolvency proceeding. Rather, they assert defenses that address whether Zaddo and Zaddo Holdings are in default on their debts. Park Bank need not re-litigate the previous proceedings in order to demand payment under the guaranties. Instead, it must show only that payment is due or that a debtor was the subject of a bankruptcy or insolvency proceeding.

¶65 An examination of the summary judgment record shows that Park Bank has made the required showing. The Westburgs do not challenge that Zaddo became the subject of an insolvency proceeding when it petitioned for a receivership. Park Bank has additionally set forth in its summary judgment materials the amounts due and payable both from Zaddo and Zaddo Holdings that result from Zaddo entering the insolvency proceeding.

¶66 Therefore, we conclude that the Westburgs' affirmative defenses do not defeat Park Bank's prima facie case for summary

----

[14] The Westburgs' affirmative defenses appear to confuse their responsibilities under the guaranties with Zaddo's defenses to an allegation that it has defaulted upon its debts. The liability of a guarantor arises not from a debt incurred by a debtor, but rather from a separate guaranty contract. Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶53, 326 Wis. 2d 521, 785 N.W.2d 462. A guarantor's liability is "separate and distinct" from the liability of the principal debtor. Id. at 54.

judgment. Because the Westburgs have failed to raise any genuine issue of material fact showing that payment is not due or that Zaddo was not the subject of an insolvency proceeding, the circuit court correctly granted summary judgment to Park Bank.

V

¶67 In sum, we conclude that Park Bank is entitled to summary judgment dismissing all of the Westburgs' counterclaims. With the exception of their claim of injuries arising from Park Bank's denial of access to their personal account, each of the Westburgs' counterclaims is derivative. Because the counterclaims are derivative, the Westburgs have no standing to raise them given that they appear in this action as guarantors. Even if the Westburgs' remaining claim of injuries arising from Park Bank's denial of access to their personal account would be determined to be a direct claim, summary judgment dismissing the claim is appropriate because their alleged damages do not arise from Park Bank's denial of access.

¶68 We need not address whether claim preclusion bars the Westburgs' affirmative defenses because we determine that the affirmative defenses do not defeat Park Bank's demand under the guaranties for payment.

¶69 Finally, we conclude that Park Bank has made a prima facie case for summary judgment. Because the Westburgs have failed to raise any genuine issue of material fact showing that payment is not due or that any debtor was not the subject of an insolvency proceeding, the circuit court correctly granted

28

summary judgment to Park Bank on its claims for payment. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶70 PATIENCE DRAKE ROGGENSACK, J. *(concurring).* I write separately to point out two fundamental principles: (1) the rights and obligations of guarantors are established by the guaranty contract, under which the guarantor and the creditor for whose benefit the guaranty was given operate; and (2) the majority opinion affirms that only a shareholder or beneficial owner has standing to bring a derivative claim under Wisconsin corporate law.[1]

¶71 I agree with the majority opinion that all counterclaims and affirmative defenses raised herein, except one, are derivative and therefore, they cannot be brought in this action. However, because in some of its discussion, the majority opinion could be read erroneously to equate shareholders' rights and obligations with those of guarantors, I do not join the majority opinion, but respectfully concur.

## I. BACKGROUND

¶72 Park Bank's claims in this action against Roger Westburg and Sandra Westburg (hereinafter, the Westburgs) are based on the continuing guaranties the Westburgs signed on January 28, 2005, for the business loans that Park Bank made to Zaddo, Inc. and Zaddo Holdings.[2] The terms of the two guaranties are identical, with the exception of the named debtors.

---

[1] Majority op., ¶¶3, 67.

[2] Litigation arising from these business loans has occurred in a Wis. Stat. ch. 128 receivership, in which the assets of Zaddo, Inc. were liquidated, and a foreclosure action, in which the assets of Zaddo Holdings were sold.

1

¶73 The Westburgs defend against Park Bank's enforcement of the guaranties by affirmative defenses and counterclaims. With one exception, the affirmative defenses and counterclaims alleged are derivative of underlying injuries to a corporation, which only the corporation or a person who has statutory standing may raise.[3] See Rose v. Schantz, 56 Wis. 2d 222, 229, 201 N.W.2d 593 (1972). Although the Westburgs are shareholders who may have had standing to bring derivative claims, they did not follow the statutory requirements to do so; therefore, they cannot raise them in this lawsuit.[4] See Read v. Read, 205 Wis. 2d 558, 565, 556 N.W.2d 768 (Ct. App. 1996) (explaining that in order to have standing to bring a derivative claim, a litigant must meet the test set out in Wis. Stat. § 180.0741).

¶74 The one claim for which the Westburgs allege direct injury to them is Park Bank's freezing their personal money-

---

[3] Wisconsin Stat. § 180.0741 provides that a "shareholder or beneficial owner" may have standing to bring derivative claims of damage to a corporation, and then only if the shareholder or beneficial owner meets certain statutory requirements. Wisconsin Stat. § 180.0740(1) defines "beneficial owner" as "a person whose shares are held in a voting trust or held by a nominee on the person's behalf."

[4] Wisconsin Stat. § 180.0741 through Wis. Stat. § 180.0744 set out requirements that must be met in order to bring a derivative claim. See Read v. Read, 205 Wis. 2d 558, 565, 556 N.W.2d 768 (Ct. App. 1996). The Westburgs did not meet those statutory requirements and therefore, they cannot raise counterclaims or affirmative defenses that rest on injury to the corporations.

market account on August 30, 2006.[5] That claim is based on the Westburgs' assertion that the funds in their personal money-market account were not subject to any security or credit agreement.[6] They allege that freezing that account damaged them because it was their sole source of funds for living expenses, as they were not drawing a salary from Zaddo. The Westburgs alleged that access to their personal account was denied until they agreed to place Zaddo, Inc. into a ch. 128 receivership. On September 7, 2006, the Westburgs placed Zaddo, Inc. into receivership.

## II. DISCUSSION

### A. Standard of Review

¶75 Whether the facts alleged in a complaint state a claim for relief that is based on an injury that is primarily to a corporation or whether the claimed injury is primarily a direct injury to another person are questions of law that we review independently. Borne v. Gonstead Advanced Techniques, Inc., 2003 WI App 135, ¶10, 266 Wis. 2d 253, 677 N.W.2d 709. The scope of a guarantor's liability under a written guaranty contract presents a question of law also subject to our

---

[5] The Westburgs allege that their money-market account was frozen "prior to" August 15, 2006. See Counterclaims, ¶34. Park Bank denies this allegation, but admits that it did freeze the account on August 30, 2006. See Reply to Counterclaims, ¶¶34, 38. I have chosen to use the August 30 date because there is agreement that the Westburgs were denied access to their money-market account on August 30, 2006.

[6] Counterclaim, ¶48.a.

3

independent review. See Cont'l Bank & Trust Co. v. Akwa, 58 Wis. 2d 376, 388, 206 N.W.2d 174 (1973).

## B.  The Westburgs' Claims

¶76  When an act that is alleged to have caused injury to a corporation is alleged also to have caused an injury to another person, we must determine whether the alleged injury to the other person is direct or merely derivative of the injury to the corporation. Rose, 56 Wis. 2d at 229. "Where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the derivative action alone that can be brought and maintained." Id. Stated otherwise, to raise a direct claim of injury, the right sought to be enforced must be that of the person seeking to enforce it and not dependent on a right of a corporation. Id.

¶77  There are occasions where the separate right of a corporation and the separate right of another person are both wrongfully affected by one act. See Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 77-78 (D.C. 2009) (explaining that where conversion by former bookkeeper was an injury to the corporation, bookkeeper's misrepresentation, which was made to hide the conversion of corporate funds, caused a separate injury to Harpole). Claims raised as affirmative defenses are subject to the same analysis of whether the defense belongs primarily to the corporation or is based on a separate and distinct right of the person who is asserting it.

¶78  In the case at hand, I agree with the majority opinion that the only right to which injury is claimed that does not

4

depend on an underlying injury to a corporation is the temporary freezing of the Westburgs' personal money-market account by Park Bank.[7]

## C. Guaranty Principles

¶79 The rights and obligations of a guarantor are separate and distinct from those of the debtor, as the guarantor's obligations arise from the terms of the guaranty contract. Bank Mut. v. S.J. Boyer Constr., Inc., 2010 WI 74, ¶54, 326 Wis. 2d 521, 785 N.W.2d 462 (explaining that a guarantor's rights and obligations are set by contract). One may guarantee the debts of an individual, as well as the debts of a corporation. The legal principles that apply to a guarantor's rights and obligations are based on the terms of the guaranty contract, not on the nature of the debtor. See McFarland State Bank v. Sherry, 2011 WI App 4, ¶1, 338 Wis. 2d 462, 809 N.W.2d 58.

¶80 Under the facts of this case, the Westburgs' obligations under the guaranty contract do not involve consideration of their status as shareholders.[8] Rather, in this action, it is the terms of the guaranty contract upon which the validity of Park Bank's actions and the Westburgs' counterclaims depend. Bank Mut., 326 Wis. 2d 521, ¶54.

---

[7] Majority op., ¶¶54-55.

[8] The significant legal question that escapes review under the facts of this case is: whether the Westburgs could have relied on a judgment from a successful derivative claim as a defense to Park Bank's claims under the guaranty contracts. Because the Westburgs did not follow the statutory requirements for bringing a derivative claim, we cannot address this question.

¶81 The guaranty the Westburgs signed is a guaranty of payment.[9] Under a guaranty of payment, when the debtor is in default, the creditor is entitled to enforce collection from the guarantor without first seeking collection from other sources. Bank of Sun Prairie v. Opstein, 86 Wis. 2d 669, 677-78, 273 N.W.2d 279 (1979). Stated otherwise, a guaranty of payment is a primary, not a collateral, promise to pay when the debtor defaults. Id. at 678. No efforts to collect on other security are necessary before a creditor may enforce a guaranty of payment against a guarantor. First Wis. Nat'l Bank of Oshkosh v. Kramer, 74 Wis. 2d 207, 212, 246 N.W.2d 536 (1976).

¶82 However, a creditor is not permitted to recover from a guarantor for more than the total debt due. Cont'l Bank, 58 Wis. 2d at 389. Therefore, a guarantor of payment is entitled to an offset from the debt owed by the debtor for the amount that the creditor has obtained from other sources. See McFarland State Bank, 338 Wis. 2d 462, ¶31.

¶83 The majority opinion imprecisely states the law when it combines principles for determining who may bring a derivative claim with the rights and obligations of a guarantor. For example, it posits that "Whether a guarantor may raise derivative claims individually in an action seeking payment under a guaranty is a question not previously addressed by Wisconsin courts."[10] However, our decisions, as well as

---

[9] The majority opinion also concludes that the guaranty the Westburgs signed is a guaranty of payment. Majority op., ¶58.

[10] Majority op., ¶45.

6

Wisconsin Statutes, specifically provide that only a shareholder or a beneficial owner has standing to bring a derivative claim. Krier v. Vilione, 2009 WI 45, ¶29, 317 Wis. 2d 288, 766 N.W.2d 517 (explaining that Krier could not sue on behalf of EOG Environmental because Krier was not a shareholder and therefore, "lacks standing" to bring a derivative suit); Borne, 266 Wis. 2d 253, ¶15 (stating that "[t]he failure to plead that one was a registered shareholder requires the dismissal of derivative claims"); Shelstad v. Cook, 77 Wis. 2d 547, 554, 253 N.W.2d 517 (1977) (explaining that "[p]laintiff's special relation to the corporation as a stockholder is intrinsic to the very nature of the [derivative claim] and thus a prerequisite to plaintiff's standing to pursue it"); see also Wis. Stat. § 180.0741.

¶84 Furthermore, when one is either a shareholder or a beneficial owner, a derivative claim may be brought only when the specific requirements set out in the statutes have been met. Read, 205 Wis. 2d at 565; see also Wis. Stat. §§ 180.0741-.0744 (setting out those requirements). Stated otherwise, unless a person or entity has the status of shareholder or beneficial owner, Wisconsin case law and statutes preclude standing to bring derivative claims. Krier, 317 Wis. 2d 288, ¶¶18, 29; Borne, 266 Wis. 2d 253, ¶15; Read, 205 Wis. 2d at 565; Shelstad, 77 Wis. 2d at 554; § 180.0741.

¶85 The majority opinion's use of Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi. (Mid-State II), 877 F.2d 1333 (7th Cir. 1989), is interesting and merits comment for a number of reasons. First, in Mid-State II, the corporation that was

7

alleged to have suffered injury from Exchange National Bank's actions was a plaintiff and therefore, it proceeded on seven counts alleging injury to itself. Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi. (Mid-State I), 693 F.Supp. 666, 669 (N.D. Ill. 1988). Second, the non-corporate plaintiffs, Lasley and Maxine Kimmel, sued as both shareholders and as guarantors. Id. at 668. Third, the standing question in Mid-State II turned on federal statutes that comprise the Bank Holding Company Act (BHCA) and the Racketeer Influenced Corrupt Organizations Act (RICO), which accorded standing to "[a]ny person who is injured in his business or property by reason of anything forbidden [under the acts]." Mid-State II, 877 F.2d at 1334-35 (citing 12 U.S.C § 1975 and 18 U.S.C § 1964(c)).[11]

¶86 Only direct injuries are sufficient to afford standing to sue under BHCA or RICO. Id. at 1335. Accordingly, the Kimmels were required to show a direct injury; a derivative injury was insufficient to establish federal standing to bring a claim under either BHCA or RICO. Id.

¶87 Therefore, the question presented in Mid-State II was not whether a guarantor could bring a derivative claim. Rather, the question presented in Mid-State II was whether the Kimmels had pled a direct or a derivative injury. Id. at 1335. The

---

[11] The plaintiffs' principal grievances were controlled by Illinois law. Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi. (Mid-State II), 877 F.2d 1333, 1334 (7th Cir. 1989). The court addressed the standing question to determine whether there was federal jurisdiction for the pendent state law claims. Id. at 1334-35.

court reasoned that shareholders' and guarantors' injuries were derivative because "[s]uits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets——to pay off one set of creditors (here, the Kimmels) while keeping the proceeds out of the hands of the firm's other creditors." Id. at 1336. Accordingly, because the court concluded that the Kimmels pled only derivative injury, they did not have standing to proceed on their federal claims. Id.

¶88 The reasoning in Mid-State II supports a guarantor's standing to proceed on a federal claim under BHCA or RICO if the guarantor can show a direct, rather than a derivative injury. Id. at 1336 ("Guarantors must be treated as creditors. When they suffer direct injury——injury independent of the firm's fate——they may pursue their own remedies"). Likewise in Wisconsin, if a guarantor has a direct injury, the guarantor owns the claim and may proceed on it.[12] However, Mid-State II has nothing to do with whether a guarantor has standing to bring a derivative claim grounded in Wisconsin law.

¶89 Wisconsin Statutes limit standing to bring derivative claims to shareholders and beneficial owners. Krier, 317 Wis. 2d 288, ¶29 (explaining that standing to sue based on a corporate injury requires one to be a shareholder); Borne, 266 Wis. 2d 253, ¶15 (same); Shelstad, 77 Wis. 2d at 554 (same); see also Wis. Stat. § 180.0741. A guarantor cannot bring a derivative claim under Wisconsin law if his sole status is that

---

[12] The Westburgs raise a direct claim against Park Bank in regard to freezing their personal money-market account.

9

of a guarantor. Krier, 317 Wis. 2d 288, ¶¶18, 29; Borne, 266 Wis. 2d 253, ¶15; Read, 205 Wis. 2d at 565; Shelstad, 77 Wis. 2d at 554; see also Wis. Stat. §§ 180.0741-.0744.

¶90 In Wisconsin, a guarantor's rights and obligations are controlled by the guaranty contract. See Bank Mut., 326 Wis. 2d 521, ¶54. On the other hand, a shareholder's rights are established by the articles of incorporation, the corporate by-laws and the Wisconsin Statutes. A guarantor cannot bring a derivative claim, unless the guarantor is also a shareholder or a beneficial owner. However, it is the status as a shareholder or beneficial owner that is necessary to bringing a derivative claim; being a guarantor is never a sufficient status to bring a derivative claim.

¶91 The majority opinion cites Labovitz v. Washington Times Corp., 172 F.3d 897 (D.C. Cir. 1999), as supporting its contention that "Mid-State presented persuasive authority for determining whether guarantors have standing to raise derivative claims."[13] Standing alone, the above quotation from the majority opinion could cause confusion because it could be read to imply that there are occasions when having the status of a guarantor is sufficient to bring a derivative claim on behalf of a corporation. However, as Mid-State II clearly explains, a guarantor needs a direct injury to sue under either BHCA or RICO. Stated otherwise, even under the federal law considered in Mid-State II, the Kimmels, as guarantors, did not have standing to bring a derivative claim. Mid-State II, 877 F.2d at

_____

[13] Majority op., ¶49.

10

1335. Accordingly, any concern that the quoted language from the majority opinion may be misinterpreted is quelled because the majority opinion repeatedly concludes that a guarantor cannot bring a derivative claim in Wisconsin. The majority opinion explains "[b]ecause each is derivative, the Westburgs have no standing to raise them given that they appear in this action as guarantors."[14] I agree with the majority opinion's conclusion that the status of a guarantor is insufficient to bring a derivative claim in Wisconsin.

### D. The Westburgs' Direct Counterclaim

¶92 Park Bank asserts it had the right to freeze the Westburgs' money-market account under the continuing guaranty; the Westburgs allege Park Bank did not have that right. Both the claim and the defense are founded on the guaranty contract signed by the Westburgs on January 28, 2005.

¶93 Park Bank's rights under the guaranty contract are very broad. First, the guaranty gives particularized notice to the Westburgs that it is a continuing guaranty that includes debt in existence on January 28, 2005, when the guaranty was signed, as well as debt that accrues subsequently. The guaranty provides:

> You are being asked to guarantee the past, present and future Obligations of Debtor. If Debtor does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Debtor or another guarantor.

---

[14] Majority op., ¶3.

11

Second, the guaranty specifically granted Park Bank rights in regard to the personal money-market account that was frozen from August 30, 2006 to September 7, 2006. In this regard, the guaranty provides:

> Guarantor grants to Lender a security interest and lien in any deposit account Guarantor may at any time have with Lender. Lender may, at any time after the occurrence of an event of default and notice and opportunity to cure, if required by § 425.105, Wis. Stats.,[15] set-off any amount unpaid on the Obligations against any deposit balances Guarantor may at any time have with Lender, or other money now or hereafter owed Guarantor by Lender. . . . This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against any Debtor.

¶94 Third, it appears that Park Bank could have taken the entire money-market account if Zaddo, Inc. or Zaddo Holdings were in default of their obligations under the loan documents, rather than simply preventing access to the account as was done from August 30, 2006 until September 7, 2006. However, on the

---

[15] Wisconsin Stat. § 425.105 addresses a merchant's obligation to give notice of default and a right to cure to consumers in consumer credit transactions. The Westburgs do not argue to us that Park Bank is a "merchant" in regard to the continuing guaranty, that the guaranty involved a "consumer credit transaction," or that notice of default is required under law. Accordingly, I do not address § 425.105 further.

documents presented in this review, it is not possible for me to determine whether a default existed on August 30, 2006.[16]

¶95 It also is not possible to determine what damages the Westburgs sustained during the period of time when they did not have access to their personal account, as they do not particularize the damages that they allege arose from Park Bank's freezing their account for this period of time. Rather, all of the damages they list on the document entitled "Defendant's Counterclaimed Damages" rest upon an underlying injury to the corporation. See Appendix of Appellants-Petitioners, pp. 101-02. Those damages are derivative of the corporations' injuries and may not be brought here, as I have explained above.

¶96 Because the Westburgs identify no damages that resulted from the temporary freeze of their personal account, I agree with the majority opinion that without a particularized statement of those damages, the Westburgs have not made a

---

[16] The majority opinion is unclear when it says that Park Bank made the required showing for summary judgment, and then links that statement to: "The Westburgs do not challenge that Zaddo became the subject of an insolvency proceeding when it petitioned for a receivership." Majority op., ¶65. First, the receivership is the insolvency proceeding. Second, the Westburgs do point out that the receivership was filed on September 7, 2006, but their personal account was frozen no later than August 30, 2006. Therefore, in regard to the freezing of their money-market account based on the allegation that Zaddo, Inc. was in default, the Westburgs do allege Zaddo was not in an insolvency proceeding when Park Bank froze their personal account. Accordingly, payment of the obligations that the Westburgs guaranteed could not be based on Zaddo's filing an insolvency proceeding, which filing would have been a default causing the guaranty to be available to Park Bank.

13

showing sufficient to overturn summary judgment dismissing the Westburgs' direct counterclaim.[17]

### III. CONCLUSION

¶97 In conclusion, I write separately to point out two fundamental principles: (1) the rights and obligations of guarantors are established by the guaranty contract, under which the guarantor and the creditor for whose benefit the guaranty was given operate; and (2) the majority opinion affirms that only a shareholder or beneficial owner has standing to bring a derivative claim in Wisconsin.[18]

¶98 I agree with the majority opinion that all counterclaims and affirmative defenses raised herein, except one, are derivative and therefore, they cannot be brought in this action. However, because in some of its discussion, the majority opinion could be read erroneously to equate shareholders' rights and obligations with those of guarantors, I do not join the majority opinion, but respectfully concur.

¶99 I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.

---

[17] Majority op., ¶55 & n.12.

[18] Majority op., ¶¶3, 67.